UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK KASSA,

    Plaintiff,

v.

                                     Case No. 15-cv-13153
                                     Hon. Matthew F. Leitman

DETROIT METRO CONVENTION
& VISITORS BUREAU *et al.*,

    Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF #9)

## INTRODUCTION

Plaintiff Mark Kassa ("Kassa") holds several trademarks with respect to the phrases "The D" and "Welcome to the D" (the "Marks"). In this action, Kassa claims that Defendants Detroit Metro Convention & Visitors Bureau and Detroit Sports Commission (collectively "Defendants") infringed the Marks when they included the phrase "Welcome to the D" on banners and signs that they displayed promoting two sporting events in the City of Detroit. Defendants deny that their banners and signs infringed the Marks. The Court agrees. Accordingly, for the reasons stated in this Opinion and Order, Defendants' Motion to Dismiss (ECF #9) is **GRANTED.**

1

# RELEVANT FACTUAL ALLEGATIONS[1]

**A.    Kassa's Registration and Use of the Marks**

Kassa is a "musician and entrepreneur" who hosts an online talk show, the "Welcome to the D Show." (First Am. Compl., ECF #12 at ¶7.) Kassa also "operates an online apparel and accessories store [] that sells various products related to Detroit and music." (*Id.*) These products include items promoting Kassa's band and his talk show. (*See id.*)

In connection with these commercial ventures, Kassa owns numerous trademarks for the phrases "Welcome to the D" and "The D":

> Specifically, [Kassa] is the owner of three trademarks for the mark "Welcome to the D" for (i) "clothing, namely, shirts and hats" (United States Registration No. 3,724,089), (ii) "entertainment services in the nature of live musical performances" (United States Registration No. 4,117,605), and (iii) "entertainment in the nature of an on-going special variety, news, music or comedy show featuring entertainment news and content broadcast over television, satellite, audio, and video media; entertainment, namely, a continuing music and entertainment news show broadcast over television, satellite, audio, and video media; entertainment, namely, a continuing music and entertainment news show broadcast over television, satellite and internet mediums" (United States Registration No. 4,376,110).
>
> Additionally, [Kassa] is the owner of two trademarks for the mark "The D" for i) "clothing, namely, shirts and hats" (United States Registration No. 4,316,115) and (ii)

---

[1] For purposes of Defendants' Motion to Dismiss, the Court accepts as true the factual allegations in the Complaint.

2

> "entertainment services in the nature of live musical performances" (United States Registration No. 4,333,876).

(*Id.*) Kassa has "allocated considerable resources and has dedicated significant effort in promoting and developing" the Marks. (*Id.* at ¶10.) Kassa has further "continually used the 'Welcome to the D' mark in connection with the promotion, advertising, and sale of entertainment services and related apparel and accessories." (*Id.* at ¶9.)

Kassa also operates a website found at the following internet address: http:/welcometothed.com. Kassa's website – which is referenced in his First Amended Complaint (*see* ECF 15 at ¶7, Pg. ID 163) – confirms that "the D" is a shorthand reference or nickname for the City of Detroit. For instance, Kassa tells visitors to his site that his family has been part of the "fabric of Detroit since 1929" and that during his musical career he has been "proud to represent 'the D.'" (*See* http://welcometothed.com/about/.) Kassa further encourages those buying apparel bearing the Marks to "wear these items with pride because you are representing one of the greatest cities in America!" (*See id.*)

**B.     Defendants Use of the Phrase "Welcome to the D"**

In 2012, the Detroit Tigers and San Francisco Giants played in Major League Baseball's World Series. The Tigers hosted two games at their home stadium, Comerica Park, which is located in the City of Detroit. In 2015, the City

3

of Detroit hosted another prominent sports event, the USA Volleyball Open National Championships. (First Am. Compl. at ¶12.) In connection with both the Word Series and the Volleyball Championships, "Defendants put up various signs and banners around the City of Detroit" that included the phrase "Welcome to the D." (*Id.*) These "signs and banner[s] were particularly noticeable on street lampposts and the lobbies of hotels and other businesses." (*Id.*)

Kassa attached examples of these signs and banners to his pleadings. (*See* ECF #15 at 8-12, Pg. ID 193-197.) The banners for both the World Series and the Volleyball Championships are similar. As depicted below, the phrase "Welcome to the D" appears at the top of the banner; the logo of the sports event and/or promoter of the event appears in the middle of the banner; the phrase "Where Champions Are Made And Championships Are Played" appears below the sponsors' logos; and Defendants' logos appear at the bottom.




(ECF #1-1 at 9, Pg. ID 19)   (ECF #15 at 9, Pg. ID 194)

Kassa maintains that Defendants have no connection to him and did not "at any time have any authority to make use of any of the Mark[s] in connection with the World Series, Volleyball Event, or any other event." (First. Am. Compl. at ¶14.) Kassa says that Defendants' use of the "Welcome to the D" mark caused "confusion to consumers" and "diluted the distinctiveness and associated goodwill" of the Marks. (*Id.* at ¶¶ 14-15.)

## PROCEDURAL HISTORY

Kassa filed this action against Defendants on September 3, 2015. (*See* Compl., ECF #1.) Kassa thereafter filed a First Amended Complaint. (*See* First Am. Compl., ECF #15.) The First Amended Complaint asserts five claims against Defendants: "Federal Trademark Infringement" (*see id.* at ¶¶ 18-21); "Federal Trademark Dilution" (*see id.* at ¶¶23-28); "False Designation of Origin" (*see id.* at ¶¶ 30-33); "Common Law Trademark Infringement" (*see id.* at ¶¶ 35-39); and "Unfair Competition under Michigan Common Law" (*see id.* at ¶¶ 41-45). All of Kassa's claims relate to Defendants' purported wrongful use of the Marks on banners and signs placed throughout the City of Detroit.

On October 2, 2015, Defendants filed a motion to dismiss Kassa's Complaint (the "Motion to Dismiss")[2]. (*See* ECF #9.) The Court held a hearing on

---

[2] Defendants filed the Motion to Dismiss prior to Kassa filing the First Amended Complaint. The parties have since stipulated that the Motion to Dismiss shall be

5

the Motion to Dismiss on November 20, 2015, and it now grants the Motion to Dismiss and dismisses the First Amended Complaint in its entirety.

## GOVERNING LEGAL STANDARD

Defendants seek relief under Federal Rules of Civil Procedure 12(b)(6). Rule 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to

---

treated as a motion to dismiss the First Amended Complaint. (*See* Stipulated Order, ECF #16.)

dismiss. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## LEGAL ANALYSIS

A.     **Kassa's Federal Trademark Infringement Claim**

    1.     **Defendants Used the Marks in a Non-Trademark Way**

A trademark is "any word, name, symbol, or device … used by a person … to identify and distinguish his or her goods … from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. To state a claim for federal trademark infringement, a defendant "must allege facts establishing that (1) [he] owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). The third requirement – "whether the defendant's use of [a] disputed mark is likely to cause confusion among consumers" – is "[t]he touchstone for liability" for federal trademark infringement. *Id.* at 610 (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)).

When determining whether a likelihood of confusion exists, courts normally weigh the following factors:

> (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of

7

>defendant in selecting the mark; and (8) likelihood of expansion of the product lines.

*Id.*

However, before a court examines these factors, it must first determine "whether [a] defendant [is] using the challenged mark in a way that identifies the source of [its] goods [or services]." *Id.* (internal quotation marks omitted). If a defendant is not using a mark as an identifier, "then the mark is being used in a 'non-trademark way' and trademark infringement laws, along with the eight-factor analysis, do not even apply." *Id.* (quoting *Interactive Products. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 694 (6th Cir. 2003)). Simply put, if a defendant does not use a mark to "identif[y] the source" of its goods or services, then as a matter of law a plaintiff cannot establish a likelihood of confusion – and cannot prevail on a federal trademark infringement claim. *Id.*

Here, Defendants did not use the phrase "Welcome to the D" to identify the source of any goods or services nor did their use of "Welcome to the D" in any way imply any connection between Kassa and the events identified on the banners and signs. On the contrary, when the language on the banners and signs is considered in its entirety, it becomes clear that Defendants used "Welcome to the D" as greeting to those arriving in the City of Detroit, not as a source identifier.

"Welcome to the D" does not stand alone as the only phrase on the banners and signs. Instead, it appears with the phrase "Where Champions Are Made And

Championships Are Played." (*See* ECF #1-1 at 9, Pg. ID 19; ECF #15 at 9, Pg. ID 194.) And this second phrase makes clear that "Welcome to the D" refers to a geographic location, not to Kassa, his television show, and/or his music venture. Indeed, the phrase "Where Champions Are Made And Championships Are Played" makes sense if and only if it is preceded by a reference to a geographic location – a location to which the "where" refers. In this context, the reference to "the D" in "Welcome to the D" on the banners can only be a purely descriptive reference to the City of Detroit, and "Welcome to the D" can be read only as a greeting to this great City. Such a greeting is plainly a non-trademark use of the phrase.

Moreover, the banners and signs identify groups *other* than Kassa as the "sources" of the messages and as the sponsors of the events. (*See* ECF #1-1 at 9, Pg. ID 19; ECF #15 at 9, Pg. ID 194). More specifically, the banners and signs include the logos of both Defendants to identify them as the source of the messages, and the banners and signs include the logos of The Detroit Tigers and USA Volleyball, respectively, to identify those organizations as the sponsors of the events. That the banners and signs identified *others* as the sources of the messages and as the sponsors of the events underscores that the banners did not use "Welcome to the D" as a source identifier. *See, e.g., M.B.H. Enterprises, Inc. v. WOKY, Inc.*, 633 F.2d 50, 54 (7th Cir. 1980) (concluding that defendant radio station's use of plaintiff's trademarked slogan was a non-trademark use because

defendant prominently included its call letters and frequency in advertisement using the slogan, making clear that the defendant, not plaintiff, was source of advertisements) [3]; *Packman v. Chicago Tribune Company*, 267 F.3d 628, 639 (7th Cir. 2001) (where plaintiff's trademarked phrase appeared under defendant newspaper's "distinctive masthead," the masthead, not the phrase, "identifie[d] the source of the products" and newspaper did not make trademark use of the phrase).

Kassa resists on multiple grounds the notion that Defendants used "Welcome to the D" in a non-trademark way.  First, Kassa maintains that Defendants' use of the phrase implied that he was endorsing, or had some relationship to, the World Series and Volleyball Championships.  However, for the reasons explained above, the Defendants' use of "Welcome to the D" did not plausibly "suggest any current association" between the events the Defendants were promoting and Kassa.  *Hensley*, 579 F.3d at 609.

Kassa next argues that the non-trademark-use case law on which Defendants and the Court primarily rely – the Sixth Circuit's decision in *Hensley* – is distinguishable because that decision involved the trademark of a person's name. But nothing in *Hensley* suggests that its reasoning is limited to trademarks of a person's name.  In fact, the Sixth Circuit in *Hensley* applied the non-trademark use analytical framework that it had previously adopted in *Interactive Products*, *supra*,

---

[3] The Seventh Circuit has described the holding of *M.B.H. Enterprises* just as the Court described it above. *See Packman*, 267 F.3d at 640.

a case that did not involve the trademark of a person's name. Moreover, multiple district courts in this Circuit have followed *Hensley* and dismissed federal trademark infringement claims that did not involve a person's name. *See, e.g., Dow Corning Corp. v. Jie Xiao*, No. 11-10008, 2011 WL 2015517, at *6-*7 (E.D. Mich. May 20, 2011) (concluding that plaintiffs had failed to state a claim for trademark infringement of "Dow Corning" mark because defendants alleged use of mark was in "non-trademark way"); *see also Grubbs v. Sheakley Group Inc.*, 2015 WL 1321126, at *5 (S.D. Ohio Mar. 18, 2015) (granting motion to dismiss infringement claim after concluding defendant used the "TriServe name and logo" in a "non-trademark way").

     Finally, Kassa asserts that the Court cannot conclude that Defendants used the Marks in a non-trademark way in the context of a motion to dismiss filed under Rule 12(b)(6). But that is precisely what the Sixth Circuit did in *Hensley*. That published and binding decision makes clear that where, as here, a plaintiff's own allegations show that a defendant used a mark in a non-trademark way, the plaintiff cannot establish a likelihood of confusion, and his federal trademark infringement claim should be dismissed. *See also Dow Corning*, 2011 WL 2015517 (dismissing trademark infringement claim under Rule 12(b)(6) because allegations conclusively established that defendant had used the mark in a non-trademark way); *Grubbs*, 2015 WL 1321126 (same).

11

## 2. Defendants Use of the Marks Was a Fair Use

In addition, Defendants are entitled to prevail on their affirmative defense of fair use. This affirmative defense allows a defendant to defeat a claim of trademark infringement by establishing that:

> the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, … or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin.

*Hensley*, 579 F.3d at 612 (quoting 15 U.S.C. § 1115(b)(4)). "In evaluating a defendant's fair use defense, a court must consider whether the [the] defendant has used the mark: (1) in its descriptive sense; and (2) in good faith." *Id.* (quoting *ETW Corp. v. Jireh Pub. Inc.*, 332 F.3d 915, 920 (6th Cir. 2003)).

With respect to the first prong of the "fair use" defense, "'the holder of a trademark *cannot* prevent others from using the word that forms the trademark in its *primary* or *descriptive* sense.'" *Hensley*, 579 F.3d at 612 (quoting *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 319 (6th Cir. 2001)) (emphasis in original). "The original, descriptive primary meaning [of a word or phrase] is always available for use by others to describe their goods, in the interest of free competition." *Herman Miller*, 270 F.3d at 319. Here, for the reasons described above, when Defendants' use of "Welcome to the D" is viewed in context, the only plausible interpretation is that the phrase is being used as a

12

greeting to the City of Detroit.

Second, as in *Hensley*, Kassa has failed to "allege facts from which any inference of bad faith can be drawn." *Hensley*, 579 F.3d at 612. There are simply no plausible factual allegations that could support a finding that the Defendants composed and displayed the signs and banners in bad faith. Defendants are therefore entitled to prevail as a matter of law on their fair use defense. This defense provides a second, independent basis to dismiss the federal trademark infringement claim in the First Amended Complaint.

Kassa counters that Defendants are not entitled to the fair use defense because Defendants "made commercial use of the [his] [M]ark[s]." (Kassa's Response Br., ECF #13 at 8, Pg. ID 181.) Sixth Circuit precedent says otherwise. The Sixth Circuit in *Hensley* allowed a defendant to invoke the fair use defense even though it had used a mark in a commercial setting. And the Supreme Court has emphasized that the Lanham Act was never "meant to deprive *commercial speakers* of the ordinary utility of descriptive words." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) (emphasis added) (addressing scope of fair use defense).

Kassa erroneously argues that the Sixth Circuit's decision in *Audi v. D'amato*, 469 F.3d 534 (6th Cir. 2006), stands for the proposition that one who makes a commercial use of a mark may not invoke the fair use defense. In *Audi*,

13

the court did conclude that a defendant was not entitled to the defense of fair use when he used the plaintiff's trademark in a commercial setting. But the defendant in *Audi* did not even attempt to show how his commercial use was a fair use. *See id.* at 547 (noting that the defendant "fail[ed] to address the many commercial uses" of plaintiff's trademark). Thus the court in *Audi* did not reach the question of whether, as a matter of law, the use of a trademark in a commercial setting is incompatible with the fair use affirmative defense.

Second, Kassa argues that "a fair use defense cannot be asserted in a motion to dismiss where a likelihood of confusion has been established." (Kassa Br., ECF #13 at 8, Pg. ID 181.) In support, Kassa cites *Paccar Inc. v. TeleScan Technologies, LLC*, 319 F.3d 243 (6th Cir. 2003). But the Supreme Court rejected *Paccar* on the precise point for which Kassa cites it. *See K.P. Permanent*, 543 U.S. at 116, 123-124 (rejecting *Paccar* and holding that "fair use can occur along with some degree of [consumer] confusion"). *See also Hensley*, 579 F.3d at 612 ("The fair use defense contemplates and tolerates 'some possibility of consumer confusion.'") (quoting *K.P. Permanent*, 543 U.S. at 121).

There is simply "no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense [of fair use] as a matter of law." *Id.* at 613. The facts Kassa alleges in the First Amended Complaint "conclusively" establish Defendants are entitled to the fair use defense here.

14

**B.     Kassa's Remaining Trademark Claims**

In addition to his federal trademark infringement claim, Kassa has brought four other claims against Defendants in the First Amended Complaint: "Federal Trademark Dilution" (*see* First Am. Compl., ECF #15 at ¶¶23-28); "False Designation of Origin" (*see id.* at ¶¶ 30-33); "Common Law Trademark Infringement" (*see id.* at ¶¶ 35-39); and "Unfair Competition under Michigan Common Law" (*see id.* at ¶¶ 41-45).  Three of these claims – false designation of origin, common law trademark infringement, and unfair competition – are analyzed under the same standard as Kassa's federal trademark infringement claim. *See, e.g., Audi*, 469 F.3d at 542 (federal trademark infringement and federal false designation of origin analyzed under the same standard); *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir. 1983) (federal trademark infringement and unfair competition under Michigan law governed under the same standard); *Goulas v. Maxmo, Inc.*, No. 14-10993, 2014 WL 2515217, at *3 (E.D. Mich. June 4, 2014) ("The Court undertakes the same analysis for the [federal] trademark infringement, unfair competition, [and] common law trademark infringement" claims).  Thus, because – and for all of the same reasons – the Court dismissed Kassa's federal trademark infringement claim, it dismisses his claims for false designation of origin, common law trademark infringement, and unfair competition under Michigan law.

15

Kassa's claim for federal trademark dilution also fails as a matter of law. To state a claim for trademark dilution under federal law, a plaintiff must plead facts sufficient to show that (1) the mark is "famous;" (2) the mark is "distinctive;" (3) the defendant used the mark "in commerce;" (4) the defendant used the mark after the mark became famous; and (5) the defendant's use "cause[d] dilution of the distinctive quality of the [] mark." *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 628 (6th Cir. 2003).

"[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Examples of marks courts have found sufficiently famous are "Nike, Pepsi, Nissan, Audi, Hershey's [and] Victoria's Secret" – brands with "a strong national presence," a "significant international presence," and "market dominance." *Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 703 F. Supp. 2d 671, 698-699 (W.D. Ky. 2010). "[N]iche fame is not sufficient." *Id.* at 699.

Kassa's allegations do not establish that the Marks are sufficiently "famous." The Marks here – "Welcome to the D" and "The D" – are not even remotely in the same category as Nike, Pepsi, and the other marks courts have found to be "famous." Because the Marks are not famous, Kassa has failed state a claim for trademark dilution under federal law.

16

Moreover, where a defendant has used a mark in a non-trademark way, a plaintiff cannot maintain a claim for federal trademark dilution. *See, e.g., Dow Corning*, 2011 WL 2015517, at *12 ("[U]nless the descriptive use of a mark suggests that the owner of the mark is the source of the goods […] such a use of the mark is not actionable under the dilution statute"). Likewise, "[t]he 'nominative or descriptive fair use … of a famous mark by another person other than as a designation of source for the person's own goods or services […]' is not actionable as dilution." *Id.* (quoting 15 U.S.C. § 1125(c)(3)(A)). *See also Hensley Mfg. v. ProPride, Inc.*, 622 F. Supp. 2d 554, 561 (E.D. Mich. 2008) (fair use of trademark "defeats any claim of dilution"). For all of the reasons explained above, Defendants' use of the Marks was a descriptive, non-trademark, and fair use, and for this additional reason, Kassa's claim for trademark dilution must be dismissed.

## CONCLUSION

For the reasons stated above, Kassa has failed to state a cognizable claim against the Defendants. Accordingly, **IT IS HERBY ORDERED** that Defendants' Motion to Dismiss (ECF #9) is **GRANTED** and the First Amended Complaint (ECF #15) is **DISMISSED** in its entirety.

```
                                    s/Matthew F. Leitman
                                    MATTHEW F. LEITMAN
Dated:  December 7, 2015            UNITED STATES DISTRICT JUDGE
```

17

     I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 7, 2015, by electronic means and/or ordinary mail.

                                            s/Holly A. Monda
                                            Case Manager
                                            (313) 234-5113